(No. 2363—

The L. E. Myers Co., an Illinois Corporation, Claimant, vs. State of Illinois, Respondent.

*Opinion filed August 18, 1937.*
*Rehearing denied January 13, 1938.*

Spitz & Adcock, for claimant.

Otto Kerner, Attorney General; John Kasserman and Glenn A. Trevor, Assistant Attorneys General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

Plaintiff's claim herein rests upon two contracts awarded it in November, 1932. One provided for the construction of a concrete bridge in DuPage County, and the other provided

for the construction of three concrete bridges in McLean County. Claimant seeks damages on the DuPage County job on the three following grounds:

(a) Change in plans by respondent.

(b) For labor difficulties encountered by claimant, resulting in winter construction and other expenses incident to a 90-day delay.

(c) Lack of cement.

Claimant seeks damages in connection with the McLean County contract on S. B. I. Route No. 119 on the alleged grounds as follows:

(a) Loss, due to delay in awarding contract incident to right of way.

(b) Additional expense incurred because of interference from paving construction.

(c) Lack of cement.

The record discloses that on August 17, 1932 respondent, through the Division of Highways, of the Department of Public Works of Illinois, solicited bids for the work in question. On September 7, 1932 claimant's bid for the DuPage County work, in the sum of Twelve Thousand Four Hundred Forty-nine and 08/100 ($12,449.08) Dollars, was declared to be the lowest bid. The next lowest bid being Eight Thousand Eight Hundred Forty-eight and 62/100 ($8,848.62) Dollars in excess of claimant's bid.

Claimant's bid was accepted on October 14, 1932, and on November 10, 1932 a written contract was entered into between respondent and claimant for the construction of said DuPage County bridge. Claimant was also the low bidder for the McLean County bridge work described in the complaint, and a contract was awarded to it on November 10, 1932. Under the specifications for the latter work same was to be finished by December 31, 1932, but it was discovered that the Division of Public Works lacked certain right of way releases for one of the bridges and a delay in signing the contract resulted, and such contract was not signed until December 27, 1932. On the same day that bids were submitted for the foregoing Bridge work, i. e. on September 7, 1932, bids were also received for paving a section of S. B. I. Route No. 119 in the territory where the McLean bridge work was to be constructed. A contract was awarded for same in the latter part of September, and such pavement was under construction during the time claimant was engaged in the building of such bridges.

Claimant complains that the delay in signing the contract, due to the absence of release of right of way, and the additional expense of getting its material to the bridge sites on account of interference from the paving construction work, and the further lack of cement in sufficient quantities at the times required, all resulted in a material loss to claimant, and they seek a total award for such alleged damages in the sum of Twenty-nine Thousand Five Hundred Seventy-nine and 13/100 ($29,579.13) Dollars.

The court has considered the testimony and exhibits in full and with earnest care. The evidence discloses a labor situation to have apparently existed in DuPage County, which would have justified claimant in instituting criminal procedure. There would be no purpose served for us to recount the testimony at length in regard to the nature of the labor difficulties encountered by claimant, for however deplorable such condition may have been, and whatever the loss to claimant therefrom, there is nothing in the record or in the law upon which claimant can herein predicate a claim for damages against the state. A. L. Nelson, vice-president of claimant company, testified (Transcript, p. 7-8) that he had investigated the condition in DuPage County, and had learned of the difficulty incident to the construction work which they might there encounter prior to the time that the contract for the work was signed; that they considered declining the contract but upon being urged by Mr. Cleveland, Director of the Highway Department at that time, they proceeded to execute the contract and commence the construction of the work. There is some conflict in the record as to what assurances were given by Mr. Cleveland as to what aid claimant might expect if they encountered the expected labor troubles, but the fact remains that claimant signed the contract, anticipating such troubles, and they cannot now justifiably expect an increase in their contract payments because of the fact that such labor troubles did arise. The record discloses that a conference was held with Mr. Cleveland in January, 1933 and claimant's summary of this agreement is set forth in a letter from claimant to Mr. Cleveland, under date of January 5, 1933, in which they state:

1. That claimant would continue to keep work closed down until afforded an opportunity to operate under reasonable working conditions.

2. That they take immediate steps to remove such equipment from the site as represents rental expense incident to the work.

3. That they would protect property on the grounds and maintain watchman service; claimant expecting reimbursement for the carrying out of such arrangements together with rental of steel sheeting then in place.

4. Unless advised to the contrary, assumption by claimant that procedure would meet with approval of the Department.

To this letter Director Cleveland replied, under date of January 10th—

1. Correcting certain statements made in the above letter.

2. Authorizing a temporary shut-down of work from thirty to sixty days; claimant to secure cooperation from county authorities in protecting workmen.

3. No release from obligations.

4. Non-allowance of any extra compensation for additional costs resulting from temporary shut-down, either for watchman, protection of materials and equipment or rental charges; all of such items of cost to be borne by the contractor.

We do not believe that the record justifies claimant's charge that respondent's letter of January 10th "was apparently written for the files" only.

Plaintiff's claim for payment for extra work authorized by respondent on the DuPage County job is supported by the evidence. Under Paragraph 9 of the proposal it is provided that additional work not provided for in the original specifications may be called for and the costs thereof duly paid plus 15%. It apparently became necessary to lower the east abutment of the DuPage County bridge about two feet after the excavation work under the regular specifications had been completed. The Division authorized such additional work on March 3, 1933 and claimant proceeded with the construction under the revised plan. They now contend for an allowance of One Thousand Two Hundred Seventy-two and 69/100 ($1,272.69) Dollars as the amount due therefor, covering costs plus 15%. Respondent denies the correctness of these figures, particularly two items thereof, i. e. One Hundred Seventy-five ($175.00) Dollars and One Hundred

($100.00) Dollars in connection with placing and removing reenforcing steel and sheeting. Respondent contends that the award for such extra work, if any, should be in the sum of Eight Hundred Three and 71/100 ($803.71) Dollars. A portion of this work was done by a sub-contractor named Swanson. Respondent's figure of Eight Hundred Three and 71/100 ($803.71) Dollars was arrived at partly from payroll data taken from the books of The L. E. Myers Company, and partly from the resident Engineer's memory (respondent's Exhibit 8). Claimant erected the concrete forms and placed the reenforcing steel according to the original plans, and when these plans were changed it apparently become necessary to remove the concrete forms and reenforcing steel in order to lower the footing the required two feet. It was then necessary to erect the concrete forms and to again replace the reenforcing steel. Thereafter respondent decided to widen the footing and claimant was again forced to dismantle the forms, remove reenforcement and again place same in their former position. Claimant's request for allowance for such extra work in the sum of One Thousand Two Hundred Seventy-two and 69/100 ($1,272.69) Dollars, is we, believe, substantiated by the record.

We will now consider the situation under the McLean County Contract. Is claimant entitled to damage because of any delay in obtaining the right of way in connection with the construction of the McLean County bridges? The first portion of the delay complained of is, that while the bid was received on September 7, 1932 and the contract provided that the work must be completed by December 31, 1932, respondent did not in fact execute and deliver the contract until December 27, 1932, only four days prior to such completion date. Claimant contends that as a result of such delay it was required to commence its work under arduous winter conditions instead of in the autumn; that the expense thereof was much greater, and that they could have used their equipment to additional advantage had they been able to complete their contract within the time fixed by it. Unfortunately for claimant, the record is not in accord with their conclusions. When plaintiff signed the contract for the work in question on December 27th, they then knew and expected either to prosecute the work through the winter months or to have several

months' delay because of winter conditions before they could complete same. Mr. Nelson testified (p. 103 transcript) that at the time he signed this contract he knew that the company would either have winter work to do, or that they would have to delay doing any work for three months until spring came. He further testified that in now submitting this claim they are not claiming rental for their equipment on account of winter work but are making a claim because of extra expense encountered as a result of such winter work. The point is not that plaintiff was unable to proceed with work in the early fall of 1932 as indicated by the completion date in the contract, but that they signed such contract at approximately the termination date thereof under conditions which they could not help but understand would entail difficulties from winter hazards not encountered in summer work, or that they might suffer additional delays by reason thereof. Of this, they cannot now complain. There is no merit to their complaint as to the delay occasioned in obtaining the right of way for one of the bridges. This question was disposed of prior to the time claimant signed its contract by an agreement entered into between claimant and the Highway Division, based upon claimant's proposal that it would begin the construction of the two bridges in McLean County, and if the right of way for the third bridge in question was not obtained by the time the balance of the work on the other two bridges was finished, then claimant should not be required to complete its contract as to such third bridge. Claimant recites this in its complaint, and further that the Division finally awarded the contract on that basis, and same was signed and accepted by claimant.

The evidence discloses that the State acquired the right of way for the third bridge by the time the contractor was ready for same (transcript p. 84). Therefore, claimant was obligated to proceed with such construction and no demand for additional compensation for same is now allowable.

Under Paragraph 3 of the third count of plaintiff's claim an award is sought because of additional expense to which claimant was put in making lengthy troblesome detours in getting material on the ground, due to the fact that paving work was under way at the same time, under a contract awarded to the Capitol Construction Company for paving a

section of Route No. 119 contiguous to such bridge sites. We find from the testimony of Vice President Nelson (transcript p. 105), "That at the time when the letting of the bridge contracts in McLean County was advertised, there was also advertised at the same time a letting for the paving work in question." Mr. Nelson further testified that he knew about that matter at that time, and that in his experience at times the contracts for slab and bridge work are let at the same time. The fact that claimant may have anticipated that the paving contractor would delay the construction of such pavement until claimants were through, is not justified by the record or by the custom for such construction work in Illinois, as indicated by the proof herein. No allowance for damages on this ground seems warranted.

A further objection is made by claimant on the ground of delay experienced in obtaining cement. It is common knowledge that respondent had a difficult situation to face in obtaining cement at reasonable prices for its highway construction work during the period covered by the contracts in question. A careful examination of the record herein has been made to ascertain whether claimant suffered from any such shortage. Their general statements to that effect are not conclusive as against the detailed evidence appearing in the record. It is disclosed therein that on April 28, 1933 plaintiff notified the Highway Department that it was in need of more cement (plaintiff's Exhibit M). The date books maintained by respondent's engineers disclose the following as to the dates immediately thereafter:

April 29th—Heavy rain, no work.
April 30th—Rain, no work.
May  1st—Rain, quit work on account of mud.
May  2nd—Rain, impossible to pave.
May  3rd—Too muddy to pave.
May  4th—Too muddy to pave.
May  5th—Rain.
May  6th—Water, no work.
May  7th—Heavy rain.
May  8th—Water on grade, pumping out coffer-dam, notified Mr. Payne that cement could be obtained at Route 122, Station 127, two and one-half miles to LeRoy.
May  11th—Rain and high water, no men working. Notified Mr. Payne to make arrangements to haul cement from R. 122.

> May 12th—No men working. Mr. Nelson of The L. E. Myers Company on job; asked about securing cement. Informed him of securing cement from R. 119, S. 101, R. 122 at Hopedale. Inspected cement in storage at Hopedale.

For several days thereafter it continued to rain. Cement was in fact apparently secured from time to time in approximately sufficient amounts under existing weather conditions, and the record does not successfully show that any serious loss or disadvantage was suffered by claimant upon such score.

It is the opinion of the court that all of plaintiff's claim should be denied, except that portion appearing under the second count for extra work, in the sum of One Thousand Two Hundred Seventy-two and 69/100 ($1,272.69) Dollars for which latter amount an award is hereby entered in favor of claimant.